[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The above matter came to this court in the configuration of dueling efforts to confirm/vacate a 1998 arbitrator's award.
The problem that permitted each party to perceive a form of victory lay in the language of the award decision.
By the time the differing interpretations were perceived by the parties, the deadlock matured through short calendar arguments and briefs, such that it was too late to seek a return to or overturn of the arbitration.
As a result, the court volunteered to hold an evidentiary hearing in order to gather sufficient facts to decide the dispute within the spirit of the arbitrator's 1998 award. The parties agreed and a hearing was held on February 26, 2001.
Plaintiff, Aldin Associates Limited Partnership, has interests in gasoline retail. Defendants Michael P. Healey and Henry Healey, Jr., owned the gas station property formerly leased by them to Aldin. A time came when Aldin did not renew its lease and landlord and tenant took the disputes that arose to arbitration.
The subject of this post-arbitration impasse is the canopy that covers the retail gasoline pumps. It had been agreed that former tenant Aldin owned the canopy and would have been entitled to keep it, by dismantling the overhead portion and removing the ground-imbedded uprights. Aldin had no interest in removing said canopy for use elsewhere. Because it was then the contemplation that the Healey brothers would re-rent the location to another gasoline retail operation, the parties further agreed that the landlords would pay a sum of money to the departed tenant for the canopy which might be used by a new tenant of landlords.
The arbitrators were asked to fix said amount. Their valuation was expressed, however, not in a flat dollar amount but with a high number and a low number dependent upon certain facts largely related to the CT Page 3283 difficulty of removal. The notion was that a very difficult removal would suggest that landlords pay the lesser amount because a challenging extraction of the canopy would be akin to something like a voluntary abandonment of the apparatus by tenant to landlord. Easier removal would suggest, on the other hand, a more valuable commodity, one more easily taken and put to use elsewhere, thus requiring landlord to pay more.
The arbitrators expressed the high/low alternatives as follows:
 1. "In the event that the canopy is bolt mounted," tenant would receive $5,000 from the landlords.
 2. If the canopy "is installed directly into a concrete base," the landlords need to pay but $1,000.
At the time of the arbitration, the parties and counsel appear to have been incompletely informed as to the exact details of the installation and departed the arbitration only to begin a lengthy battle over which contingency best expressed reality.
Thus, the court, faced with the parties' difficulty expressed in multiple oral arguments, offered to litigate the facts as if at a courtside trial while striving to follow the arbitrators' rationale.
This court has come to be persuaded that both alternatives expressed contain too much factual truth for either to be an "alternative" to the other. The canopy is "bolt mounted" and "installed directly into a concrete base." Each of the arbitrators' articulations fits and doesn't.
The hearing before this court essentially pitted landlord Michael Healey against Timothy Teeter, a longtime engineer for the canopy company. Mr. Healey was a witness to the original installation of the canopy. Mr. Teeter was not, but was familiar with the methodology, having had supervising responsibility for many installations by the canopy company.
There was a consensus that the vertical support (of the horizontal overhead canopy) is a post of structural steel which has a horizontal base at its bottom. Into this base plate four holes are pre-drilled. The post and base plate are lowered onto rods which protrude upward, all below ground, from a large block of poured concrete. At the bottom of each of the rod/bolts, under said block, a 90-degree bend occurs, so that the rods cannot move upward through the block of concrete. Lug nuts are then turned down onto the tops of the upright rods or bolts, holding down the horizontal base plate. One identical set up exists at the opposite end of the canopy. CT Page 3284
The two major witnesses differ almost exclusively in the realm of how deep the lug nuts are. The court accepts the testimony of Mr. Teeter who said the lug nuts are only inches below the surface. This brings the removal task closer to the "easier to remove" ($5000) result. Mr. Healey described the bolt fix-down as much deeper and then poured over with additional and substantial concrete. At the time of Mr. Healey's somewhat casual, although personal, observation, he had no special reason to commit to memory the methodology with an eye to ease of removal years thereafter.
The Teeter (easier to remove) theory makes engineering sense as well. Given that the rods cannot move upward through the concrete block, there is little need to pour substantial concrete over the tops of the rods, i.e., on top of the lug nuts.
As a result, the Teeter facts present an easier unscrewing of the lug nuts than would the probably less likely Healey recall, although it was honestly expressed.
The court fixes the appropriate compensation at $3,800. to be paid by landlord to the former tenant. The court does not feel it proper to arrive at the "easy to remove" full $5,000 result because one who sets out to get to and remove the lug nuts must still jackhammer (or hammer and chisel) several inches (but not feet) of concrete to access them.
The Court
NADEAU, J.